WEST JERSEY AND SEASHORE RAILROAD COMPANY v.
THE CITY OF BRIDGETON.

04   189
70   580

Submitted July 14, 1899—Decided November 13, 1899.

The charter of the city of Bridgeton does not empower the city council to require railroad companies running through the city to erect, maintain and operate safety gates at the street crossings.

On *certiorari.*

Before Justices DIXON and COLLINS. ·

For the prosecutor, *Joseph H. Gaskill.*

For the defendant, *Thomas W. Trenchard.*

The opinion of the court was delivered by

DIXON, J.   The only question presented in this case is whether the charter of the city of Bridgeton (*Pamph. L.* 1875, *p.* 354) empowered the city council to pass an ordinance requiring the West Jersey and Seashore Railroad Company and the Central Railroad Company of New Jersey to erect, maintain and operate safety gates at the railroad crossings on Irving avenue, in the city.

The pertinent provisions of the charter are section 26, paragraph 11, and section 27.   The former authorizes the council, by ordinance, "to regulate the speed and running of locomotive engines and railroad cars through said city and to designate the crossings at which any railroad company shall be required by the city council to station flagmen or signals to warn travelers of the approach of locomotive engines or railroad cars."   Section 27 provides that the council may "make and establish such other ordinances * * * as they may deem necessary and proper for the good government, order, protection of persons and property and for the preser-

vation of the public health and prosperity of said city and its inhabitants."

In interpreting the charters of corporations, whether public or private, courts adopt a strict rather than a liberal construction of powers, and any fair, reasonable doubt concerning the existence of power is resolved by the courts against the corporation, and the power is denied. 1 *Dill. Mun. Corp.* (3d. ed.), §§ 89, 91.

Under this rule the enactments quoted appear inadequate to confer the power claimed by the city.

The power to "regulate the speed and running of locomotive engines and railroad cars" is most reasonably interpreted by confining its scope to the regulation of the rate at which the engines and cars may be propelled and the times when and places where they may stand in obstruction of ordinary public travel. *Pennsylvania Railroad Co.* v. *Jersey City*, 18 *Vroom* 286.

The power to "designate the crossings at which any railroad company shall be required to station flagmen or signals to warn travelers of the approach of locomotive engines or railroad cars" fails to constitute a clear grant of the necessary power because its terms are limited to "warning signals," while "safety gates" are something more than "warning signals." They are physical hindrances in the way of those seeking to cross the railroad tracks. They substantially differ in both their nature and their office from mere signals. The proper rule of interpretation forbids such an extension of the grant as would include these appliances.

The general welfare clause contained in section 27 of the charter cannot, we think, support the city's claim because the special grants of power already mentioned plainly imply that on those particular subjects the purpose of the legislature was fully expressed in the terms there employed. "It is a rule of right reason that general words may be qualified by particular clauses of a statute. * * * In the * * * Latin of the early English law the same idea is conveyed in the words *generalis clausula non porrigitur ad ea quœ specialiter sint*

*comprehensa."* *Sedgw. Stat. & Const. L.* 443. Consequently, where a corporate charter contains a grant of limited power over a specified subject, other more general grants of power over matters not specified should not be construed as enlarging the special power. If the twenty-seventh section of this charter was intended to authorize the council to require railroad companies to maintain safety gates at street crossings it was equally efficacious for the stationing of flagmen and signals, and on that hypothesis the particular provision for flagmen and signals was useless. Such a construction of the statute is not to be favored.

In our judgment the ordinance under review is *ultra vires* and should be set aside.